UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
HENRY SPANN, CAROL MUNLEY, and          :
CATHERINE CHIAPPAROLI, on behalf of     :
themselves and all others similarly     :        02 Civ. 8238 (DLC)
situated,                               :
                                        :        OPINION AND ORDER
                    Plaintiffs,         :
                                        :
          -v-                           :
                                        :
AOL TIME WARNER, INC., WARNER BROS.     :
RECORDS, WARNER BROS. COMMUNICATIONS,   :
INC., the TWI/MUSIC PENSION PLAN, the   :
TWI PLAN ADMINISTRATIVE COMMITTEE,      :
WARNER-ELEKTRA-ATLANTIC CORP. ("WEA     :
CORP."), the TIME WARNER EXCESS PENSION :
PLAN, the TIME WARNER EXCESS PENSION    :
PLAN ADMINISTRATIVE COMMITTEE,          :
SPECIALTY RECORDS, INC., WEA            :
MANUFACTURING INC., a Delaware          :
corporation, and any successor thereto, :
the WEA MANUFACTURING PENSION PLAN, the :
WEA MANUFACTURING PENSION PLAN          :
ADMINISTRATIVE COMMITTEE, ATLANTIC      :
RECORDING CORPORATION, the ATLANTIC     :
RECORDING CORPORATION PENSION PLAN, the :
ADMINISTRATIVE COMMITTEE OF THE PLAN    :
for the ATLANTIC RECORDING CORPORATION  :
PENSION PLAN, TIME WARNER ENTERTAINMENT :
COMPANY, L.P., the TIME WARNER PENSION  :
PLAN ADMINISTRATIVE COMMITTEE, WARNER   :
PUBLISHING, INC., the WARNER PUBLISHING :
PENSION PLAN, the WARNER PUBLISHING     :
PENSION PLAN ADMINISTRATIVE COMMITTEE,  :
and DOES 1-10,                          :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Ronald S. Kravitz
Kim Zeldin
Liner Yankelevitz Sunshine &
Regenstreif LLP
One Post Street, Suite 2400
San Francisco, CA 94104

Allen C. Engerman
Law Offices of Allen C. Engerman, PC
666 Dundee Road, Suite 1200
Northbrook, IL 60062

Christopher Allegaert
Cornelius P. McCarthy
Allegaert Berger & Vogel
111 Broadway, 18th Floor
New York, NY 10006

For Defendants:
Lewis R. Clayton
Jonathan J. Freedman
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

DENISE COTE, District Judge:

The plaintiffs in this class action brought claims pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, <u>et seq.</u>, against AOL Time Warner, Inc. and related companies ("AOL TW"), as well as six pension plans ("Plans") and their administrative committees.  Having reached a preliminary settlement and distributed notice of such settlement to putative class members, the plaintiffs and defendants jointly seek final approval of their settlement agreement.  Following a final settlement fairness hearing on April 8, 2005, and having reviewed supplemental submissions of June 3, the class action settlement is approved.

**BACKGROUND**

<u>Summary of Plaintiffs' Claims</u>

Plaintiffs claim that the defendants violated ERISA Sections 404 and 502, 29 U.S.C. §§ 1104, 1132,[1] by failing to annualize their partial years of compensation when calculating their pension benefits using the Plans' definition of "Average Compensation," thereby underpaying them.[2] Typical Plan language describes a participant's average compensation as his "average annual Compensation for the five consecutive calendar years in which he receives Compensation which results in the highest average." The Plans provide that

> [f]or any period that is less than a full calendar year, a Participant's compensation shall be determined by multiplying the Compensation actually received by the Participant for such period by a fraction, the numerator of which is twelve and the denominator of which is the number of months (with any fraction of a month counted as a full month for this purpose) in such period for which Compensation was actually received.

A central dispute between the plaintiffs and defendants was whether, according to the Plans, such annualization was required only where an employee has participated in a plan for less than a

---

[1] Plaintiffs allege that the defendants violated ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by failing to act in accordance with Plan documents and applicable regulations, and bring suit under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under the Plans. The Complaint also contains causes of action for breach of fiduciary duty and declaratory relief.

[2] The factual background of this case is recited briefly here to provide context for the settlement terms. The background is set out in greater detail in the Opinion of December 24, 2003. <u>See</u> <u>Spann v. AOL Time Warner, Inc.</u>, 219 F.R.D. 307, 311-14 (S.D.N.Y. 2003). Familiarity with that Opinion is assumed.

full calendar year in total. The defendants contended that the committees charged with administering the Plans had for decades consistently interpreted the Plans' annualization provisions to require annualization only in such circumstances.

Two of the named plaintiffs, Henry Spann ("Spann") and Carole Munley ("Munley"), requested and received lump sum pension payments when they concluded their employment with AOL TW. Spann and Munley both signed a standard release required of all employees electing to receive a lump sum pension distribution ("Release"), which stated "I understand that when I endorse the check I receive for the amount of my payment, I will be releasing the Plan, the Committee, the Trustees and my Employer from any liability in connection with my participation in the Plan." Spann claims that his lump sum payment was underpaid by approximately $19,300, while Munley claims that her lump sum payment was underpaid by approximately $1,100.

The other named plaintiff, Catherine Chipparoli ("Chipparoli"), elected to receive her pension funds as an annuity, rather than in a lump sum. Consequently, she did not sign a Release. Chipparoli claims that her annuity pension payments are underpaid by $88 per year.

The language of the Plans has subsequently been revised in an effort to avoid the alleged ambiguities that led to this lawsuit. The parties anticipate that as a result of the revisions, this "problem" will not recur. The revisions confirm the defendants' long-standing interpretations of the Plans'

language.

<u>Procedural History</u>

On April 8, 2002, the plaintiffs filed a class action in the Central District of California that was transferred to this District on October 8.  Apart from the topic of damages, discovery was completed on October 31, 2003.  The plaintiffs' first motion for class certification was denied.  <u>See</u> <u>Spann v. AOL Time Warner, Inc.</u>, 219 F.R.D. 307, 324 (S.D.N.Y. 2003).  Following negotiations, the plaintiffs and defendants arrived at a stipulated settlement agreement on July 2, 2004 that was subsequently amended in December (as amended, "Settlement Agreement") and jointly proposed that a class be certified for the purpose of settlement only.  A preliminary approval hearing was held on August 19, 2004.  An Order of December 21, 2004 preliminarily approved the Settlement Agreement, approved the proposed form of class notice ("Class Notice"), and certified a class for settlement purposes only pursuant to Rule 23(b)(1), Fed. R. Civ. P.  A settlement fairness hearing was held on April 8, 2005.  For reasons described below, a second fairness hearing was scheduled for June 9, 2005.

<u>Class Definition and Composition</u>

The definition of the class certified for the purposes of settlement recognized two subclasses, one for those who received lump-sum distributions, and one for those who received an

annuity.  The definition is as follows:

> Each and every participant in one or more of the Plans
> whose pension benefit under one or more of the Plans
> was or will be calculated based upon one or more
> periods of Benefit Service that concluded during the
> Class Period, and each of the spouses, designated
> beneficiaries, executors, successors, alternative
> payees under a qualified domestic relations order,
> representatives or heirs of said participants.  The
> proposed settlement class is divided into two
> subclasses, each of which includes at least one hundred
> individuals.
>
> Subclass One consists of those Class Members who
> received a lump-sum distribution of pension benefits
> from one or more of the Plans that was calculated based
> upon a period of Benefit Service that concluded during
> the Class Period.  Named plaintiffs Henry Spann and
> Carol Munley received their pension benefits as lump-
> sum distributions.
>
> Subclass Two consists of those Class Members who (a)
> received or who are receiving a pension benefit in the
> form of an annuity from one or more Plans that was
> calculated based upon a period of Benefit Service that
> concluded during the Class Period; or (b) have a vested
> right to receive a pension benefit in the form of an
> annuity from one or more of the Plans at some date in
> the future that was calculated based upon a period of
> Benefit Service that concluded during the Class Period.
> Named Plaintiff Catherine Chiapparoli receives her
> pension benefit monthly in the form of an annuity.

(Emphasis supplied.)  The Class Period is from January 1, 1989

through December 31, 1999.


Preliminary Approval

At the August 19, 2004 preliminary approval hearing, counsel

proposed a settlement amount of $2.9 million, with at most one-

third, or approximately $1 million, being allocated to attorney's

fees, $10,000 for each of the three named plaintiffs as incentive

awards, post-approval administration fees of $300,000, and

attorney's costs and expenses of approximately $250,000, leaving at least approximately $1.3 million to be distributed to the Class. At the preliminary approval stage, the Class was divided into the same two subclasses as now, although at the preliminary approval hearing, defense counsel estimated that the total class size was approximately 7,000, with 6,000 in Subclass One, and only 1,000 in Subclass Two.

Defense counsel estimated that if the plaintiffs all prevailed to the maximum extent on all of their claims, the total recovery for the class would be approximately $12 million plus interest, and that $10 million of this figure would be attributable to Subclass One, and $2 million would be attributable to Subclass Two. Plaintiffs' counsel proposed that the Settlement Fund of approximately $1,300,000 be divided equally between the two subclasses. This would represent a recovery of approximately 6.5% of the Subclass One claim and approximately 30% of the Subclass Two claim.

Summary of Settlement Terms and Applications

After the preliminary approval hearing, the initial estimates about the size of the Class and the subclasses were adjusted, as were the estimated total recoveries for each subclass and the Class as a whole. Following these adjustments, the estimated size of the Class was 10,000 individuals, with 5,500 in Subclass One, and 4,500 in Subclass Two. It is estimated that if the plaintiffs all prevailed to the maximum

extent on all of their claims, the total recovery for the class would be approximately $16 million plus interest, with $7.8 million plus interest for Subclass One, and $8.2 million plus interest for Subclass Two.

The Settlement Agreement provides that the defendants will create a $2.9 million fund ("Settlement Fund") to be distributed as described below. Up to $300,000 shall be paid to the Settlement Administrator to cover administration expenses connected with implementing the Settlement Agreement, including the process of calculating individualized damage awards for each class member.[3] It appears that approximately $60,000 of the $300,000 will remain available for distribution to class members.

The Settlement Agreement also provides for an allocation of fees to Class Counsel. These fees shall not exceed 33.33% of the total amount recovered for the Class, plus actual expenses and costs incurred. Class Counsel has applied for $966,666.66 in fees, constituting 33 1/3% of the total amount of the Class recovery, plus costs and expenses in the amount of $175,485.28. On April 27, 2005, plaintiffs' counsel applied for $2,934.78 in supplemental costs including the costs associated with preparing for, and traveling to, the April 8 fairness hearing.

The Settlement Agreement provides that in addition to their recovery as class members, the three named plaintiffs shall receive incentive awards no greater than $10,000 each. The named

---

[3] If administrative expenses exceed $300,000, the excess cost shall be borne by the defendants.

plaintiffs have applied for incentive awards of $10,000 each. All three named plaintiffs are elderly, were intimately involved in the litigation, were deposed, and participated in the settlement process.

It is proposed that one quarter (25%) of the net recovery be distributed to Subclass One members, and three quarters (75%) to Subclass Two members. This percentage was adjusted from the 50-50 division advocated at the preliminary approval hearing to account for shifts in the percentage of Class members belonging to the two subclasses.[4] Based on the percentages of recovery assigned to each subclass, Subclass One would receive a total of $350,000 and Subclass Two would receive a total of $1,050,000. This would represent a total recovery of 4.5% of the estimated $7.8 million total damages for Subclass One plaintiffs, and would represent a total recovery of 12.8% of the estimated $8.2 million total damages for Subclass Two plaintiffs.

---

[4] The Subclass One amount will be distributed proportionately to each Subclass One member according to the ratio of the lump sum distribution received by each member to the total lump sum distributions received by all Subclass One members. The Subclass Two amount will be distributed proportionately to each Subclass Two member according to the ratio of the present value of the annuity received or to be received at a future date by each member to the present value of the annuities received or to be received at a future date by all Subclass Two members. The present value of the annuity received is determined as of each Subclass Two member's termination date that used the actuarial assumptions required by the Plan in which each Subclass Two member participated. The present value of the annuities received by all Subclass Two members is determined in the same fashion.

The Class Notice contained boldfaced, capital letter warnings that any Class member wishing to object to the terms of the settlement or to appear at the final settlement fairness hearing must file a notice of intent to object or appear postmarked no later than February 25, 2005. Among other things, the Class Notice included a summary of the Settlement Agreement, including the $2.9 million Settlement Fund, administrative expenses of up to $300,000, Class Counsel fees of up to 33.33% of the total amount recovered plus actual expenses and costs, incentive awards of $10,000 for each named plaintiff, the 25/75 split method of allocating the remainder of the Settlement Fund among the two subclasses, the value of the anticipated recoveries of both subclasses if they were to prevail on all of their claims, and a boldfaced and capitalized statement indicating that the settlement, if approved, would release all Class members' claims against the defendants that arise out of or are related to the claims in this lawsuit.

The Class Notice was mailed on January 7, 2005 to the 10,058 class members initially identified by AOL TW.[5] From this mailing, 305 Class Notices were returned to the Settlement Administrator with forwarding addresses, and 2,816 Class Notices were returned as undeliverable. The Settlement Administrator mailed the former 305 Class Notices to the forwarding addresses,

---

[5] Although 10,059 Class Notices were mailed out, one name on the mailing list was a duplicate.

and obtained from various sources new addresses for 2,474 of the 2,816 returned as undeliverable. This wave of mailings yielded 92 Class Notices returned with forwarding addresses, and 282 Class Notices returned as undeliverable. The former 92 Class Notices were then mailed to the forwarding addresses. Consequently, 9,435 Class Notices have been mailed successfully to class members' current addresses, yielding a success rate of almost 94% of the class members initially identified.

The Settlement Administrator also established a toll-free telephone hotline that provided information concerning the rights of Class members, notice of the fairness hearing, information about the settlement website discussed below, and an opportunity to request a copy of the Class Notice. This hotline was operational from January 6 to March 9, 2005, during which time it received 471 telephone calls, including 79 requests for Class Notices that the Settlement Administrator filled.

The Settlement Administrator additionally designed and launched an informational website located at www.spann settlement.com, which allowed visitors to view the Class Notice, the Settlement Agreement, the Amendment to the Settlement Agreement, the Opinion of December 24, 2003, the Order of December 21, 2004, the Complaint, and information about the fairness hearing. The website included contact information for the Settlement Administrator through its mailing address and toll-free telephone number, and allowed visitors to request that a Class Notice be mailed to them. The website became operational

on January 6, 2005.  Since that date, it has received 773 "hits" and 78 requests for Class Notices that the Settlement Administrator filled.

Newly Discovered Pensioners

        In reviewing files in this action, and after the initial mailing of the Class Notice, the defendants discovered forty-two additional individuals who were eligible for, but were not receiving, pensions.  Of these, thirty-five were covered by the Class definition.  Each of these individuals was advised how to file claims for their pension funds and, where appropriate, how to participate in the class action.  The thirty-five were given until May 12, 2005 to object to this settlement or to request an opportunity to appear at a second fairness hearing.  The second hearing was scheduled to be held only in the event any objections or requests to be heard were received.

The Reaction of the Class to the Class Notice

        No objections to the proposed class settlement have been filed.  No class member has requested to appear and be heard at the scheduled settlement fairness hearings.

**DISCUSSION**

Judicial Approval of Class Action Settlements Under Rule 23(e)

Rule 23(e), Fed. R. Civ. P. mandates court approval of any settlement or dismissal of a class action. The standard to be applied in determining whether to approve a class action settlement is well established: the district court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005); Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). In so doing, the court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974). A proffered settlement that is "in large part negotiated prior to certification of the class," as occurred in this case, "is subject to a higher degree of scrutiny than is usual in assessing a settlement's fairness." County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323 (2d Cir. 1990).

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." Wal-Mart, 396 F.3d at 116. The court should

analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983) (citation omitted). A court must ensure that the settlement resulted from "arm's-length negotiations" and that plaintiffs' counsel engaged in the discovery "necessary to effective representation of the class's interests." D'Amato, 236 F.3d at 85.

In evaluating the substantive fairness of a settlement, a district court must consider factors enumerated initially in Grinnell:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Wal-Mart, 396 F.3d at 117 (citation omitted).

Finally, public policy favors settlement, especially in the case of class actions. Id. at 116. "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of

14

litigation." <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 73 (2d Cir. 1982).


<u>Rule 23(e) Approval of This Settlement</u>

The plaintiffs and defendants have been able to evaluate their litigation risks accurately, as discovery had been substantially completed at the time a settlement agreement was negotiated. The defendants had produced 45,000 pages of documents, and the plaintiffs had taken seven depositions.

The litigation and settlement negotiations have been conducted at arm's-length. The parties engaged in settlement conferences during discovery in April and July 2003 before Magistrate Judge Kevin Fox to no avail. Following discovery and the denial of the class certification motion, the parties resumed settlement conferences in April and May 2004 before Magistrate Judge Henry Pitman. These latter conferences generated the Settlement Agreement.

The total Settlement Fund value of $2.9 million, as compared to the plaintiffs' best case scenario litigation payoff of approximately $16 million, is fair given the substantial likelihood that class members would receive no payments at all absent this settlement. First, the fact that the committees charged with administering the Plans had, for decades, interpreted the Plans' annualization provisions to be used only

where an employee had participated in a plan for less than a full
calendar year, together with the deference normally accorded such
interpretations, creates a strong likelihood that the plaintiffs'
claims are meritless.  Second, the Opinion of December 24, 2003
denied class certification because the named plaintiffs did not
meet the typicality or adequacy requirements of Rule 23(a), Fed.
R. Civ. P., see Spann, 219 F.R.D. at 320, 321, and the class did
not meet the similar treatment requirement of Rule 23(b)(1)(A),
Fed. R. Civ. P., see id. at 322, and the predominance and
superiority requirements of Rule 23(b)(3), Fed. R. Civ. P., see
id. at 323, 324.  In the absence of certification, and given the
small incremental amount owed to individual Plan participants,
counsel for both the plaintiffs and defendants agree that it is
highly unlikely that any attorney would bring a claim on behalf
of an individual Plan participant or that any Plan participant
would have pursued this litigation.  These two factors
substantially discount the value of each Class member's claim.

The imbalance in the division of the award between the two
subclasses would ordinarily require the appointment of separate
counsel to represent the separate and conflicting interests of
the two subclasses.  Given the modest recovery by the Class,
however, any appointment of additional counsel would necessarily
reduce by a material amount the already modest awards to Class
members.  As a consequence, the Court has focused with particular

care on the division and is satisfied that it is equitable.  The

value of Subclass One members' claims is discounted significantly

relative to the value of Subclass Two members' claims because

Subclass One members were required to execute the Releases.  The

Releases present a substantial bar to recovery for each

individual Subclass One member, meriting the 25/75 Settlement

Fund split among the two subclasses where approximately 55% of

the Class members are Subclass Two members.  Also, the Class

Notice clearly indicated the method of allocating the Settlement

Fund and the rationale for such allocation, and no class member

objected to the allocation.  In sum, after careful consideration

of all the <u>Grinell</u> factors that are of greatest significance to

this litigation, it is appropriate to approve this settlement

even though it provides only a modest recovery to the class, and

favors one subclass over another.

## Attorney's Fees and Costs

It is well established that where an attorney creates a

common fund from which members of a class are compensated for a

common injury, the attorneys who created the fund are entitled to

"a reasonable fee -- set by the court -- to be taken from the

fund." <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 47

(2d Cir. 2000) (citing <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472,

478 (1980)).  Determination of "reasonableness" is within the

discretion of the district court.  <u>Goldberger</u>, 209 F.3d at 47.
There are two methods by which the district court may calculate
reasonable attorney's fees in a class action, the lodestar or
percentage method.  <u>See</u> <u>Wal-Mart</u>, 396 F.3d at 121.  Under either
method, attention should be paid to the following factors: "(1)
the time and labor expended by counsel; (2) the magnitude and
complexities of the litigation; (3) the risk of the litigation;
(4) the quality of representation; (5) the requested fee in
relation to the settlement; and (6) public policy
considerations."  <u>Goldberger</u>, 209 F.3d at 50 (citation omitted).
<u>See also</u> <u>Wal-Mart</u>, 396 F.3d at 121.

Using the lodestar method, the court "scrutinizes the fee
petition to ascertain the number of hours reasonably billed to
the class and then multiplies that figure by an appropriate
hourly rate."  <u>Goldberger</u>, 209 F.3d at 47.  The final step is to
consider whether an enhancement of the lodestar is warranted.
<u>Id.</u>  <u>See also</u> <u>Savoie v. Merchants Bank</u>, 166 F.3d 456, 460 (2d
Cir. 1999) (applying the lodestar steps).

The second method is the much simpler percentage method, by
which the fee award is simply "some percentage of the fund
created for the benefit of the class."  <u>Savoie</u>, 166 F.3d at 460.
This method has been found to be a solution to some problems
raised by the lodestar method.  First, it "relieves the court of
the cumbersome, enervating, and often surrealistic process of

evaluating fee petitions." Id. at 461 n.4 (citation omitted).
Second, it decreases plaintiff lawyers' incentive to "run up the
number of billable hours" for which they would be compensated by
the lodestar method. Id. at 460-61. See also Wal-Mart, 396 F.3d
at 121. And finally, it decreases the incentive to delay
settlement because the fee for the plaintiffs' attorneys does not
increase with delay. Savoie, 166 F.3d at 461.

Class Counsel represents that its attorneys and paralegals
billed 3,936.65 hours totaling $1,300,785.00 in fees from May 11,
2001 through March 15, 2005.[6] The billing rates of these
professionals are reasonable for the localities and experience of
the attorneys, and type of work performed. A cursory review of
billing records reveals that the bulk of the work was performed
by two partners, Ronald S. Kravitz ("Kravitz") and Kim Zeldin
("Zeldin"), and two associates, Robert A. Binion ("Binion") and
Jeffrey C. Engerman ("J. Engerman"), all of the Los Angeles law
firm Liner Yankelevitz Sunshine & Regenstreif LLP ("Liner Firm").
They were assisted by local counsel and Allen C. Engerman ("A.
Engerman") of the Chicago law firm Law Offices of Allen C.
Engerman, P.C. A. Engerman functioned as the "elder statesman"
of the plaintiffs' team, and was a source of frequent advice
regarding litigation strategy. The billing records for all

---

[6] This figure does not include time spent preparing the fee
motion, or anticipated fees for implementation of the settlement.

counsel had detailed, contemporaneous descriptions of their work. There is no need to scrutinize the billing records of plaintiffs' counsel for unnecessarily duplicative or inefficient work, since plaintiffs' counsel's lodestar amount exceeds by several thousand dollars the amount of fees requested as part of the Settlement Agreement. Given the high risk that the defendants would prevail with a complete defense on the issue of the interpretation of the Plan language, as well as the reasonable amount of time and labor expended by plaintiffs' counsel, a fee award of one-third of the settlement, or $966,666.66, is appropriate. A review of the itemized cost and expense reports provided by plaintiffs' counsel also indicates that these costs are well-documented and were reasonably incurred; an award of $178,420.06 in costs and expenses is appropriate.[7]

In reaching this conclusion, it is necessary to consider carefully whether an award of fees of this magnitude is justified given the limited recovery by individual class members. In posing this question, one is essentially asking whether use of the class action device was justified at all given that an interpretation of an ERISA plan by a court as a result of litigation brought by just one plan participant will ordinarily

---

[7] This figure is the sum of the $175,485.28 claimed by plaintiffs' counsel in their initial submissions for settlement approval and the $2,934.78 in supplemental costs plaintiffs' counsel subsequently claimed in their April 27, 2005 declaration.

benefit all participants since plan administrators must apply each plan provision in the same way to all participants.

For the reasons already discussed above, however, it is highly unlikely that any attorney would have brought this litigation on behalf of a single Class member, and therefore, without resort to the class action device, it is unlikely that these Class members would have ever received any additional payment.  Even more significantly, as a result of this litigation, approximately forty-two Plan participants who were eligible to receive pensions were identified and will now be in a position to receive pension benefits for the first time.  Finally, the attorneys have bestowed a benefit on the Plans by removing an arguable ambiguity from the governing documents.[8]  Therefore, an award to counsel of this magnitude is entitled to approval.

Incentive Awards

An incentive award may be given to compensate named plaintiffs for efforts expended "for the benefit of the lawsuit." Dornberger v. Metropolitan Life Ins. Co., 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (citation omitted).  An incentive award of

---

[8]  Lawsuits such as this create an incentive for plan administrators to ensure that benefit calculation provisions are written as clearly as possible so as to obviate ambiguities that could produce litigation.

$10,000 for each named plaintiff is appropriate.

## CONCLUSION

The settlement is approved.  The proposed Settlement Fund of
$2.9 million shall be established.  From this Settlement Fund,
Class Counsel is awarded $966,666.66 in fees and $178,420.06 in
costs and expenses and each named plaintiff is awarded an
incentive award of $10,000.  An allowance of up to $300,000 of
the Settlement Fund shall be set aside to reimburse the
Settlement Administrator for administrative expenses associated
with calculating and distributing awards to Class members.  The
remainder of the Settlement Fund shall be distributed by the
Settlement Administrator pursuant to the terms of the Settlement
Agreement.

SO ORDERED:

Dated:    New York, New York
          June 7, 2005

                                    _____
                                        DENISE COTE
                                 United States District Judge